United States Court of Appeals,

Fifth Circuit.

No. 92-3105.

Summary Calendar.

Grace JAMES, Plaintiff,

v.

HYATT CORP. OF DELAWARE, d/b/a Hyatt Regency New Orleans, et al., Defendants.

HYATT CORP. OF DELAWARE and National Union Fire Insurance Company, Pittsburg, Pa., Third-Party Plaintiffs-Appellees,

v.

SCHINDLER ELEVATOR CORPORATION and the Hartford Insurance Company, Third-Party Defendants-Appellants.

Jan. 22, 1993.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, KING and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

Schindler Elevator and The Hartford Insurance Co., third-party defendants, appeal an adverse judgment. We reverse and render judgment in favor of Schindler and The Hartford.

Background

Grace James filed suit in state court against Hyatt Corporation of Delaware and its comprehensive general liability insurer, National Union Fire Insurance Company of Pittsburg, claiming that she was injured as a result of an escalator malfunction in Hyatt's hotel in New Orleans. Hyatt and National Union removed the case to federal court and Hyatt impleaded Schindler, the escalator maintenance contractor. Shortly before the scheduled trial Hyatt and National Union settled with James. Hyatt then filed an amended third-party complaint adding National Union as third-party plaintiff and The Hartford as third-party defendant.

In the third-party action, Hyatt and National Union sought to recover under an indemnity provision of the Service Agreement between Hyatt and Schindler which also required Schindler to

maintain a comprehensive general liability policy on its own behalf and an owners and contractors protective liability policy naming Hyatt as an insured.[1]  Hyatt and National Union claimed that under the CGL and OCPL policies The Hartford had an obligation to defend Hyatt in the James action.

The matter was tried by consent before a magistrate judge[2] who, after trial, found neither negligence nor strict liability as relates to Schindler nor any requirement to indemnify Hyatt for the settlement.  The trial judge concluded, however, that under the two policies The Hartford had a duty to defend Hyatt.  Judgment was rendered against Schindler and The Hartford *in solido* for the full amount of the settlement plus statutory penalties, attorney's fees, and costs.  Schindler and The Hartford timely appealed.

Analysis

We review judgments rendered by a magistrate judge pursuant to 28 U.S.C. § 636(c) as we would those rendered by a district judge.[3]  The interpretation of the terms of indemnity and insurance contracts are matters of law which we review *de novo*.[4]  Findings of fact are upheld unless clearly erroneous.[5]

A. HARTFORD'S LIABILITY

The Comprehensive General Liability Policy

---

[1]The service agreement provides:

> Contractor [Schindler] agrees to indemnify Hyatt and hold it harmless from and against any direct loss suffered in any liability to third-parties (including without limitation, the employees of either of them) when such loss or liability is directly due to the bodily injury of any person or damage to any property directly caused by the negligent acts or omissions of contractors or those of its employees, sub-contractors, agents or servants in the performance of any work under this agreement.  This indemnity agreement shall include attorney's fees and settlements of claim or suit.

[2]28 U.S.C. § 636(c).

[3]28 U.S.C. § 636(c)(3);  *Gulf States Enterprises v. R.R. Tway, Inc.,* 938 F.2d 583 (5th Cir.1991).

[4]*Musgrove v. Southland Corp.,* 898 F.2d 1041 (5th Cir.1990);  *Truehart v. Blandon,* 884 F.2d 223 (5th Cir.1989).

[5]Fed.R.Civ.P. 52;  *Gulf States,* 938 F.2d at 586.

Reading the CGL policy's contractual liability provision in conjunction with the Service Agreement, the trial judge concluded that The Hartford had a duty to defend Hyatt. The Hartford counters that it had no duty to defend Hyatt under the CGL policy because Hyatt was not a named insured.

Under Louisiana law an insurer has no duty to defend one who is not a named insured. In *Musgrove, Lopez,* and *Ordonez,*[6] the insureds each contractually agreed to provide liability insurance covering a third party but failed to do so. In each instance the court found that the insurer had no duty to defend the third party. In *Ordonez* the court held that the insurer had no duty to defend the contractual indemnitee of its insured. Under the contractual liability provision of the policy at issue therein, the insurer's exposure was "limited to damages for which the *named insured* becomes liable as a result of a contractual agreement to indemnify or hold harmless."[7] In the case at bar, James' complaint stated a claim for which Schindler ultimately could have been held liable under the indemnity agreement; as a result, the contractual liability provision required The Hartford to defend its insured—Schindler. But The Hartford had no concomitant duty to defend Hyatt under the CGL policy. In ruling to the contrary, the magistrate judge erred.

The Owners and Contractors Protective Liability Policy

Hyatt was a named insured under the OCPL policy, and the magistrate judge found that The Hartford had a duty to defend Hyatt under this policy as well. It is well-established that an insurer's duty to defend is broader than its liability for damage claims. The insurer has a duty to defend its insured provided the pleadings disclose any *possibility* of liability under the policy.[8] An insurer may refuse to defend only if the allegations of the petition unambiguously exclude coverage.[9] Failure to

---

[6]*Musgrove; Lopez v. Hartford Accident & Indemnity Co.,* 495 So.2d 375 (La.App.), *cert. denied,* 498 So.2d 757 and 498 So.2d 758 (La.1986); *Ordonez v. W.T. Grant Co.,* 297 So.2d 780 (La.App.1974).

[7]*Ordonez,* 297 So.2d at 783 (emphasis added).

[8]*Strauss v. Rivers,* 595 So.2d 706 (La.App.1992).

[9]*Meloy v. Conoco, Inc.,* 504 So.2d 833 (La.1987); *Jensen v. Snellings,* 841 F.2d 600 (5th Cir.1988).

acquit the duty to defend renders the insurer liable for the insured's expenses, including reasonable attorney's fees.[10] The Hartford contends that the magistrate judge erred in finding that the allegations of plaintiff's complaint did not fall within an OCPL policy exclusion.

The OCPL policy covered bodily injury and property damage arising from Schindler's performance of its duties under the Service Agreement, or arising from the negligence of the Hyatt in connection with its general supervision of Schindler's work. The policy also contains the following exclusions:

This insurance does not apply:

(b) to bodily injury or property damage occurring after

(1) all work on the project (*other than service, maintenance or repairs), to be performed by or on behalf of the named insured* at the site of the covered operations has been completed or

(2) that portion of the designated contractor's work out of which the injury arises has been put to its intended use by any person or organization.

(Emphasis in original.)

The James' petition alleged that Hyatt and ABC Elevator Company did not adequately inspect and maintain the escalator, and that the Hyatt failed to exercise reasonable care to guard against accident or injury. This states a claim arising out of the operations performed by Schindler, the escalator maintenance contractor. The essential question, however, is whether the allegations of the petition unambiguously fall within one of the policy exclusions. We conclude that they do.

The Hartford contends that James' claims fall within exclusion (b)(2),[11] arguing that the OCPL policy covers only damage which occurs while service or maintenance work is in progress. In effect, the policy treats each act of servicing or maintenance as a discreet insurable event.[12] Schindler was not servicing or maintaining the escalator and the escalator was being put to its

---

[10]*Strauss v. Rivers.*

[11]The trial court addressed only the applicability of exclusion (b)(1).

[12]Hyatt argues that exclusions (b)(1) and (b)(2) should be read together and that per (b)(1), "service, maintenance, or repairs" are exempt from the exclusion. This argument is not persuasive; sections (1) and (2) are joined in the disjunctive, thus the exclusions must be treated separately.

intended use when James was injured. Accordingly, this occurrence falls within the (b)(2) exclusion.

Exclusion (b)(2) is similar to the completed operations exclusion found in many CGL policies.[13] Completed operations exclusions consistently have been held to be clear and unambiguous.[14] Hyatt contends that these completed operations exclusion cases are inapposite. We do not agree. For example, in *Rothman* the exclusion was applied to an air conditioner repair contractor. The *Rothman* court found that the policy did not cover the claims against the contractor by a homeowner whose residence was destroyed by fire shortly after the contractor worked on his heating system. Because the repair was complete when the fire began, the exclusion applied.[15]

Hyatt also maintains that by requiring Schindler to obtain an OCPL policy naming Hyatt as the insured, the parties intended that Hyatt have protection equivalent to a CGL policy. If this was the parties' intent, it is to be expected that their agreement would have insisted that Schindler obtain a CGL policy on Hyatt's behalf.[16] This is not an ambiguous policy; the policy Hyatt required Schindler to obtain simply did not cover every possible claim related to the operation of the escalator.[17]

We conclude that the court *á quo* erred in ruling that the plaintiff's claim was not within the

---

[13]*See Cell-O-Mar, Inc. v. Gros,* 479 So.2d 386 (La.App.1985), *cert. denied,* 481 So.2d 1332 and 481 So.2d 1333 (La.1986); *West Bros. of DeRidder, Louisiana, Inc. v. Morgan Roofing Co.,* 376 So.2d 345 (La.App.1979); *Aetna Casualty & Surety Co. v. Rothman,* 331 So.2d 81 (La.App.1976). Under the completed operations exclusions, operations may be deemed complete "when the portion of the work out of which the injury or damage arises has been put to its intended use...."

[14]*Cell-O-Mar; Rothman.*

[15]The *Rothman* court found that "[t]he issue here is not ambiguity, confusion, or uncertainty resulting from a misleading coverage provision, but rather the failure of the insured to purchase an available coverage which the insured did not opt to secure." 331 So.2d at 86.

[16]In negotiating the Service Agreement, Hyatt originally proposed that it be named as an additional insured under the Schindler CGL policy. Schindler refused. We are not wont to provide in the guise of interpretation of contracts a benefit to one party which specifically was sought but refused by the other party.

[17]"A liability policy not being a statutory policy, an insurer's liability is only as provided in the policy and attached endorsements, and the parties are at liberty to select the types of risk to be covered." *Southwest Louisiana Hospital Association v. Hunt,* 551 So.2d 818, 821 (La.App.1989) (citing *Kendrick v. Mason,* 234 La. 271, 99 So.2d 108 (1958)).

policy exclusions. We conclude that The Hartford was under no duty to defend Hyatt either under the CGL or OCPL policy.

## Statutory Penalties

Statutory penalties are available when the insurer's failure to pay a claim is "arbitrary, capricious, or without probable cause."[18] Because we find that the insurer was under no obligation to defend or pay, the award of statutory penalties and third-party plaintiffs' attorney's fees must be reversed.

## B. SCHINDLER'S LIABILITY

### The Indemnity Agreement

The trial court rendered judgment against Schindler and The Hartford "for $17,517.77 plus statutory penalties and third party plaintiffs' attorneys fees and expenses." Schindler contends that because the district court found Schindler was not negligent, there is no basis for such judgment against it. Schindler's liability to Hyatt, if any, must be based upon the indemnity provisions of the Service Agreement. The district court, however, expressly declined to address Schindler's liability under that agreement.[19] Interpretation and application of the indemnity agreement present purely legal questions which we appropriately may address on appeal.

Generally, an indemnitee must establish his actual liability in order to recover payment from an indemnitor. "[A]n indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss."[20] When the indemnity agreement also covers defense costs,

---

[18]La.R.S. 22:658(b)(1).

[19]For example, regarding the third-party plaintiff's right to reimbursement, the magistrate judge's memorandum opinion notes:

> Arguments on the grounds of indemnity principles and interpretation of the particular indemnity provision need not be addressed. The resolution of the reimbursement is based on the breach of the duty to defend.

As to Schindler this is incorrect as a matter of law. While the indemnity provision made Schindler potentially liable for defense costs, it did not give rise to a duty to defend. *See Meloy.*

[20]*Meloy,* 504 So.2d at 839 (citations omitted).

the allegations of the complaint against the indemnitee are irrelevant to the indemnitor's obligation to pay. The terms of the indemnity agreement itself govern the obligations of the parties.[21]

According to Hyatt, in the following situations an indemnitee settling with the plaintiff need only demonstrate *potential* liability to recoup the amount of a reasonable settlement: (1) if the indemnitee tenders the defense to the indemnitor, (2) the indemnity claim is founded upon a judgment, or (3) the indemnity claim is based upon a written indemnity contract. In any event, the indemnitee must also demonstrate that the amount of settlement was reasonable.

We are not persuaded that this contention accurately states controlling Louisiana indemnity law.[22] In the *Sears* case we find Sears seeking indemnification from its contractor, Shamrock, for damages incurred as a result of a gas tank leak, including amounts Sears paid to the fire department for clean-up reimbursement. The court found that "a negligence finding is a prerequisite to indemnification by the contractor to the owner under this contract and as no negligence was found herein, appellant is not entitled to indemnification." Whether the contractor was potentially liable for the amounts paid the fire department was not even considered. In this case, the indemnity agreement provided indemnity only for losses caused by Schindler. The trial judge found no negligence or other basis for liability of Schindler. This finding has adequate record support. Accordingly, Schindler is not required to indemnify either Hyatt or National Union.

C. STATUTORY PENALTIES

Schindler is cast in judgment with The Hartford not only for the costs of defense and the amount of the settlement, but also for statutory penalties. Schindler is not an insurer and thus cannot be subject to statutory penalties. In addition, neither Schindler nor The Hartford had a duty to

---

[21]*Id.*

[22]In *Terra Resources, Inc. v. Lake Charles Dredging & Towing,* 695 F.2d 828 (5th Cir.1983), a diversity case, we suggested a broader application of the Louisiana rule, actually triggering indemnity by potential liability. No Louisiana case has followed *Terra Resources* in this regard. To the contrary, a few months after the decision in *Terra Resources,* an intermediate appellate court reaffirmed the Louisiana rule, *Sears, Roebuck & Co. v. Shamrock Construction Co.,* 441 So.2d 379 (La.App.1983). The language of the indemnification agreement referred to the indemnitor's negligence, as in the case at bar. The Louisiana court held that in such an instance, a finding of the indemnitor's negligence was a prerequisite to indemnification.

defend;  neither is liable for penalties.

For these reasons the judgment appealed is REVERSED and judgment in favor of the third-party defendants, Schindler and The Hartford, is RENDERED.