United States Court of Appeals,

Fifth Circuit.

No. 95-31038.

LIBERTY MUTUAL INSURANCE COMPANY; Gust K. Newberg Construction Co./Hardaway Co., A Joint Venture, Plaintiffs-Appellants,

v.

PINE BLUFF SAND & GRAVEL CO., INC., Defendant-Appellee.

July 26, 1996.

Appeal from the United States District Court for the Western District of Louisiana.

Before HIGGINBOTHAM, WIENER and PARKER, Circuit Judges.

WIENER, Circuit Judge:

Plaintiffs-Appellants Gust K. Newberg Construction Company (Newberg) and its insurer, Liberty Mutual Insurance Company (Liberty Mutual),[1] appeal from the district court's grant of summary judgment in favor of Defendant-Appellee Pine Bluff Sand and Gravel Company, Inc. (Pine Bluff) on their indemnification claim. Concluding that (1) an ambiguity in the indemnity provision of the contract between Pine Bluff and Newberg prevents the contract from being interpreted as a matter of law, and (2) Newberg is entitled to a post-settlement determination of its fault, if any, with regard to the underlying suit that gave rise to the indemnification claim, we reverse the grant of summary judgment and remand the case

---

[1]In discussing the facts and proceedings leading up to the instant action, we refer to Newberg and Liberty Mutual individually as "Newberg" and "Liberty Mutual." In discussing the actions taken by Liberty Mutual and Newberg in the prosecution of the instant action, however, we refer to Newberg and Liberty Mutual collectively as "Newberg."

1

to the district court for further proceedings consistent with this opinion.

I.

FACTS AND PROCEEDINGS

In 1988, in conjunction with an ongoing project designed to render the Red River navigable, the United States Army Corps of Engineers (the Corps) contracted with Newberg for the construction of a lock and dam near Colfax, Louisiana. Newberg then subcontracted the dredging work for the lock and dam to Pine Bluff. The contract between Newberg and Pine Bluff (the Subcontract Agreement) provides that Pine Bluff will indemnify Newberg for specified claims arising out of Pine Bluff's performance of its dredging operations, "provided that any such claim ... is caused in whole or in part by any negligent act or omission of [Pine Bluff] ... except to the extent [the claim] is caused in part by [Newberg]."[2]

---

[2]The Subcontract Agreement between Newberg and Pine Bluff originally required Pine Bluff to

> indemnify and hold harmless the ... General Contractor [Newberg] ... from and against all claims, damages, causes of action, losses and expenses, including attorney's fees, arising out of or resulting from the performance of the work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, ... and (2) is caused in whole or in part by any negligent act or omission of the Subcontractor [Pine Bluff] ... *regardless of whether it is caused in part by a party indemnified hereunder.* (emphasis added)

> In August 1988, however, Newberg and Pine Bluff amended the Subcontract Agreement. Under the terms of the contract after the amendments, Pine Bluff is required to

2

Pursuant to its contract with Newberg, Pine Bluff excavated a channel through the Red River and deposited the dredged silt from the excavation in six different disposal areas around the location selected for the construction of the lock and dam.  In July 1990, one of those disposal areas was the site of an automobile accident involving Zane Lemoine, who was allegedly injured when the car in which he was riding collided with one of Pine Bluff's dredge pipes.  In March 1992, Lemoine filed suit in federal district court against, *inter alia,* Pine Bluff, the Corps, and Newberg.  Newberg demanded that Pine Bluff indemnify and defend it in the Lemoine suit;  however, Pine Bluff refused.  Newberg's defense was provided instead by Liberty Mutual.

The Lemoine suit settled before trial.  Under the terms of the settlement, Pine Bluff contributed $100,000;  Newberg—through Liberty Mutual, and after expressly reserving its rights to pursue a contractual indemnity claim against Pine Bluff—contributed $100,000;  and the Corps contributed $25,000.  The suit was then dismissed.

Subsequently, in June 1994, Newberg filed this diversity action in federal district court, seeking recovery, pursuant to the

indemnify and hold harmless the ... General Contractor [Newberg] ... from and against all claims, damages, causes of action, losses and expenses, including attorney's fees, arising out of or resulting from the performance of the work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, ... and (2) is caused in whole or in part by any negligent act or omission of the Subcontractor [Pine Bluff] ... *except to the extent it is caused in part by a party indemnified hereunder.*  (emphasis added)

3

indemnification provision of the Subcontract Agreement, of the $100,000 that it had contributed to the Lemoine settlement and the costs that it had incurred in defending against the Lemoine action. Eight months later, the district court granted a summary judgment of dismissal in favor of Pine Bluff. Newberg timely appealed to this court.

## II.

## ANALYSIS

### A. STANDARD OF REVIEW

We will affirm a grant of summary judgment only if we are "convinced, after an independent review of the record, that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3] Fact questions must be considered with deference to the non-movant; questions of law are reviewed de novo.[4] Our de novo review of legal questions includes the interpretation and application of indemnity agreements.[5] The preliminary determination whether an agreement is ambiguous also constitutes a question of law that is reviewed de novo.[6]

### B. THE MERITS

---

[3]*Herrera v. Millsap,* 862 F.2d 1157, 1159 (5th Cir.1989) (internal quotations omitted).

[4]*See id.*

[5]*See James v. Hyatt Corp. of Delaware,* 981 F.2d 810, 814-15 (5th Cir.1993); *see also id.* at 812 ("The interpretation of the terms of indemnity ... contracts are [sic] matters of law which we review *de novo.*").

[6]*See City of Austin, Texas v. Decker Coal Co.,* 701 F.2d 420 (5th Cir.1983), *cert. denied,* 464 U.S. 938, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

4

Under Louisiana law, indemnity provisions are construed in accordance with general rules governing contract interpretation.[7] When the terms of a contract are unambiguous and lead to no absurd consequences, we interpret them as a matter of law.[8] On the other hand, ambiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties.[9]

Here, the indemnity provision of the Subcontract Agreement specifies that Pine Bluff will indemnify Newberg

> from and against all claims, damages, causes of action, losses and expenses, including attorney's fees, arising out of or resulting from the performance of the work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, ... and (2) is caused in whole or in part by any negligent act or omission of [Pine Bluff] ... except to the extent it is caused in part by [Newberg].

---

[7]*See Abbott v. Equity Group, Inc.,* 2 F.3d 613, 626 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994).

[8]*See id.* (citing *Carter v. BRMAP,* 591 So.2d 1184, 1188 (La.Ct.App.1991)).

[9]*See, e.g. Couvillion v. Shelter Mut. Ins. Co.,* 672 So.2d 277 (La.Ct.App.1996) ("Where there is anything doubtful in indemnity agreements, the court must endeavor to ascertain the common intent of the parties.") (citing *Poole v. Ocean Drilling & Exploration Co.,* 439 So.2d 510, 511 (La.Ct.App.)), *writ denied,* 443 So.2d 590 (La.1983); *Amoco Prod. Co. v. Fina Oil & Chem. Co.,* 670 So.2d 502, 511 (La.Ct.App.) ("In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. Intent is an issue of fact which is to be inferred from all the surrounding circumstances.") (citations omitted), *writ denied,* 673 So.2d 1037 (La.1996); *McDuffie v. Riverwood Int'l Corp.,* 660 So.2d 158, 160 (La.Ct.App.1995) ("[W]hen the terms of a written contract are susceptible to more than one interpretation, or where there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, extrinsic evidence is admissible to clarify the ambiguity or to show the parties' intent.").

At the heart of this appeal is a dispute over the meaning and significance of the indemnity provision's stipulation that Pine Bluff is not required to indemnify Newberg "to the extent that" Newberg causes the loss.

1. *The Dispute*

The two parties proffer antithetical interpretations of the pertinent language from the Subcontract Agreement. Pine Bluff argues that under the terms of the Subcontract Agreement, it is required to indemnify Newberg only if Newberg is *not in any way responsible* for an underlying claim. Stated differently, Pine Bluff reads the indemnity provision as freeing it from any obligation to indemnify Newberg if an underlying claim is caused in any part by Newberg. In a related argument, Pine Bluff asserts that Newberg's decision to participate in the Lemoine settlement amounts to a waiver of its right to seek indemnification from Pine Bluff, as the settlement precluded a trial on the merits to determine whether Newberg was free from fault.

For its part, Newberg contends that the indemnity provision incorporates the principles of comparative negligence. Specifically, Newberg argues that Pine Bluff is required to indemnify it for the total sum of its expenses or losses resulting from an underlying claim, *less the portion of those expenses or losses that corresponds to Newberg's degree of fault.* Additionally, Newberg urges that it did not waive its right to seek indemnification from Pine Bluff by participating in the Lemoine settlement. Instead, insists Newberg, the case should be remanded

6

for proceedings on the issue of its fault, if any, for Lemoine's injuries, and if fault be found, then to what degree.

2. *Assessing the Issues*

a. *Interpreting the Indemnity Provision*

We examine first the issue of the meaning of the indemnity provision's stipulation that Newberg is not entitled to indemnification from Pine Bluff "to the extent that" a claim is "caused in part" by Newberg. As detailed above, both Pine Bluff and Newberg have advanced reasonable interpretations of this language. Each interpretation is consistent with the substance of the Subcontract Agreement as a whole; neither produces an absurd result; and the intent of the parties to the contract "cannot be ascertained from the language employed."[10] Accordingly, the indemnity provision is "ambiguous and uncertain as to the intention of the parties"[11]; and the district court erred in interpreting the provision as a matter of law.[12] For these reasons, the issue must be remanded to the district court for additional proceedings consistent with this opinion.

b. *Waiver of Right to Pursue Indemnity*

(1) *Pine Bluff's Contribution Theory*

Pine Bluff urges that remand is not necessary. Specifically, it insists that, irrespective of how the contested language is

---

[10]*Dixie Campers, Inc. v. Vesely Co.,* 398 So.2d 1087, 1089 (La.1981).

[11]*Id.*

[12]*See* cases cited *supra* note 9.

7

interpreted, Newberg waived its right to seek indemnification by participating in and contributing to the Lemoine settlement. Pine Bluff presents two formulations of this waiver argument. It first argues as follows: (1) the Subcontract Agreement actually incorporates a *contribution* provision, rather than an indemnification provision, because the contract requires an apportionment of fault between Pine Bluff and Newberg; (2) under general principles of Louisiana tort law, a settling party is not entitled to seek contribution from joint tortfeasors[13]; (3) therefore, as a settling party, Newberg is not entitled to seek contribution from Pine Bluff.

Although we applaud Pine Bluff's creativity, we decline to impose this novel approach on the law of Louisiana that governs indemnity agreements. First, as a fundamental matter, indemnity agreements are controlled by the law of contracts, not torts.[14] Thus, tort principles governing contribution and indemnification are inapplicable to the instant case.[15]

Second, we note that under Louisiana law, "an indemnification

---

[13]*See, e.g. Diggs v. Hood,* 772 F.2d 190 (5th Cir.1985).

[14]*See, e.g., Brown v. Drillers, Inc.,* 630 So.2d 741, 758 (La.1994).

[15]*See Rouillier v. Illinois Cent. Gulf R.R.,* 886 F.2d 105, 108 (5th Cir.1989) (noting that indemnity agreements "give rise to contractual indemnity claims not to claims in tort") (applying Louisiana law); *see also Anthony v. Louisiana & Arkansas Ry Co.,* 316 F.2d 858, 866 (8th Cir.) ("Since we have held that the loss here is covered by contractual indemnity, liability is controlled by the provisions of the contract and consideration need not be given to common law standards of indemnity or contribution between joint tortfeasors."), *cert. denied,* 375 U.S. 830, 84 S.Ct. 74, 11 L.Ed.2d 61 (1963).

agreement will not be construed to cover losses arising from an indemnitee's negligence unless a mutual intent to provide such indemnification is expressed in unequivocal terms."[16]  In effect, then, under Louisiana law indemnity agreements are frequently *presumed* to contemplate some apportionment of fault.  Yet Pine Bluff has not cited, and independent research has failed to reveal, any authority for the proposition that indemnity provisions that apportion fault should be treated as "contribution provisions" and subjected to general tort-based contribution principles.  All in all, we are not persuaded by this formulation of Pine Bluff's argument.

### (2) *Pine Bluff's Alternate Theory*

Not to be so easily deterred, Pine Bluff contends in the alternative that, even if the Subcontract Agreement is not governed by general contribution principles, Newberg's decision to participate in the Lemoine settlement constitutes a waiver of its right to seek indemnification from Pine Bluff.  Pine Bluff's reasoning is as follows:

> If the Lemoine case had gone to trial and Newberg was determined to be free from fault, Newberg would not be indebted to Lemoine and no indemnity would be owed.  On the other hand, if Newberg was [sic] determined [after a trial] to be negligent, any amount awarded to Zane Lemoine would not be indemnified by Pine Bluff under the subcontract.  However, instead of going to trial on the merits, Newberg chose to

_____

[16]*Amoco Prod. Co. v. Forest Oil Corp.,* 844 F.2d 251 (5th Cir.1988) (citing *Graham v. Milky Way Barge, Inc.,* 824 F.2d 376 (5th Cir.1987));  *see also See Couvillion v. Shelter Mut. Ins. Co.,* 672 So.2d 277, 284 (La.Ct.App.1996);  *Carr v. City of New Orleans,* 626 So.2d 374, 381-82 (La.Ct.App.1993), *writ denied,* 634 So.2d 398 (La.1994);  *Soverign Ins. Co. v. Texas Pipe Line Co.,* 488 So.2d 982 (La.1986).

9

avoid the "hazards of litigation".... In such circumstances, Newberg cannot recover indemnity for the money paid either in settlement or for cost of defense.

We disagree. Louisiana law does not bar Newberg from pursuing a post-settlement determination of fault through an action against Pine Bluff to enforce the terms of their indemnification agreement.[17] Indeed, such a bar would conflict with firmly established public policy encouraging settlements.[18]

The nature of the Lemoine settlement makes evident the inadvisability of precluding Newberg from having its day in court on the apportionment of fault issue: Newberg was simply one of several players participating in a single, global settlement. It contributed a lump sum equal to the amount contributed by Pine Bluff, *and* it expressly reserved its right to pursue an indemnification claim against Pine Bluff. The manifest object of the settlement was the avoidance of an expensive and time-consuming lawsuit with Lemoine and the "capping" of the quantum of any

---

[17]In *James v. Hyatt Corp. of Delaware,* 981 F.2d 810 (5th Cir.1993), for instance, a service agreement between Hyatt Corporation and Schindler Elevator provided that Schindler would indemnify Hyatt for claims directly caused by Schindler's negligence. In an underlying lawsuit, Grace James filed an action against Hyatt claiming that she had been injured as a result of an escalator malfunction in a Hyatt hotel. *Id.* at 812. Hyatt settled with James and pursued a third party action against Schindler. *Id.* After a (post-settlement) trial, the magistrate judge found no negligence on the part of Schindler, and concluded that under the terms of the indemnity provision Schindler was therefore not obligated to indemnify Hyatt for the amount of its settlement with James. *Id.* Without questioning the propriety of a post-settlement determination of fault, we affirmed. *Id.* at 815.

[18]*See Bass v. Phoenix Seadrill/78, Ltd.,* 749 F.2d 1154, 1164 (5th Cir.1985); *St. Romain v. Lambert,* 521 So.2d 618, 620 (La.Ct.App.), *writ denied,* 523 So.2d 233 (La.1988).

10

eventual judgment regardless of who might be cast—precisely the result that is contemplated by the public policy that promotes settlements. Pine Bluff essentially invites us to punish Newberg for its willingness to help advance a multi-party settlement; for obvious reasons, we decline that invitation.

Pine Bluff maintains that our decision in *Tanksley v. Gulf Oil Corp.*[19] mandates a different conclusion. We again disagree. In *Tanksley,* we held the Louisiana Oilfield Indemnity Act[20] nullified an indemnity agreement between a platform owner (the indemnitee) and an injured worker's employer (the indemnitor) for the reason that the platform owner had settled with the injured worker prior to seeking indemnification from the employer.[21] We noted in *Tanksley* that our holding

> is in tension with the established precept that "public policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation." ... Regardless, we are convinced that the Louisiana [Oilfield Indemnity Act], as interpreted by the Louisiana Supreme Court, mandates this result.[22]

The Oilfield Indemnity Act is in no way implicated by the instant appeal; and we are confronted by no comparable legislation compelling us to create an exception to established public policy. Accordingly, Pine Bluff's reliance on *Tanksley* is unavailing.

With that thread removed from its analysis, Pine Bluff's

---

[19]848 F.2d 515 (5th Cir.1988).

[20]LA.REV.STAT.ANN. § 9:2780 (West 1991).

[21]*Tanksley,* 848 F.2d 515.

[22]*Id.* at 518 (citations omitted).

argument unravels:  Having already contributed $100,000 to the global settlement in the Lemoine case, Newberg *would* be entitled to indemnity if post-settlement proceedings were to determine that Newberg was free from fault.  Moreover, if the language of the Subcontract Agreement were construed as incorporating principles of comparative negligence, Newberg would be entitled to indemnification, less its ratable share of the loss based on its degree of fault.  Conversely, even if the indemnification provision were interpreted to free Pine Bluff from its indemnification obligation in the event that Newberg is at fault to *any* degree, post-settlement proceedings would still be needed to establish whether Newberg was in fact at fault at all.  Thus, we remand the instant case for (1) an interpretation of the indemnity provision (comparative fault or any fault), (2) a determination whether Newberg was guilty of any fault whatsoever, and (3) if so—and if comparative fault is determined to be the standard—then for an apportionment of fault.

### III.

### CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment in favor of Pine Bluff is reversed;  and the case is remanded for further consideration consistent with this opinion. REVERSED AND REMANDED.