United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 21, 2003**

Charles R. Fulbruge III
Clerk

Revised September 19, 2003

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-30718

WESTCHESTER FIRE INSURANCE COMPANY,

Plaintiff – Appellant,

versus

HASPEL-KANSAS INVESTMENT PARTNERSHIP; ET AL,

Defendants,

HASPEL-KANSAS INVESTMENT PARTNERSHIP; EDWARD M. HASPEL;
MAURICE S KANSAS; TRAVELERS INSURANCE COMPANY

Defendants – Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, Chief Judge, REAVLEY, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Westchester Fire Insurance Co. ("Westchester") filed a subrogation action in tort and contract

against the Appellees (collectively, "Haspel-Kansas") seeking to recover one million dollars that

Westchester contributed to a settlement for K&B Drug Stores ("K&B"). The settlement was paid to

Jermol Stinson ("Stinson") for injuries he sustained in a shooting incident which occurred in a parking

lot of the shopping center where K&B was a tenant and which Haspel-Kansas owns. On appeal, Westchester argues that the district court erred by failing to properly apply Louisiana's "cause-in-fact" analysis when it determined that Haspel-Kansas was not liable for Stinson's injuries. Westchester also argues that the district court ignored well-established Fifth Circuit caselaw when it held that Westchester waived its right to seek contractual indemnity from Haspel-Kansas by voluntarily participating in the settlement. For the reasons that follow, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of July 4-5, 1992, Stinson was shot and severely injured in a shopping center parking lot outside of K&B in New Orleans. K&B leased its store from Haspel-Kansas which owns the small strip shopping center where K&B is located. K&B is insured by Travelers Insurance Company and has excess insurance from Westchester. K&B was the only store in the shopping center that operated twenty-four hours a day. In the late 1980s, patrons of three nearby nightclubs began to park in the shopping center parking lot. Prior to the shooting, a representative of K&B wrote letters to Haspel-Kansas to inform the landlord of problems associated with the nightclub patrons parking and congregating in the parking lot. The problems cited ranged from vandalism and car theft, to reports of gunfire in the vicinity of the store. K&B repeatedly requested assistance from Haspel-Kansas in dealing with the security problems. Haspel-Kansas indicated to K&B that it did not believe it was obligated to provide security for the parking lot. K&B then hired off-duty New Orleans police officers to provide security inside and outside of the store. One of the officers described some weekend crowds as "overwhelming and creating a 'carnival' atmosphere."

2

When the shooting occurred, a uniformed police officer working K&B security was approximately an automobile length away from the shooter. Stinson was shot in the neck and became paralyzed. Stinson filed suit in state court against K&B for negligence. K&B answered the complaint and filed a third-party demand against Haspel-Kansas. Stinson later added Haspel-Kansas as direct defendants. K&B and Haspel-Kansas agreed to mount a joint defense to the lawsuit. Accordingly, K&B dismissed its third-party demand against Haspel-Kansas without prejudice. Haspel-Kansas agreed that K&B did "not give up its right to claim indemnity or contribution in a suit to be filed later, should Stinson prevail." In January 1998, Stinson dismissed his claims against Haspel-Kansas with prejudice. In April 1998, Stinson settled his claims against K&B for two million dollars. Westchester, K&B's excess insurer, paid one million dollars of that settlement.

Westchester sued Haspel-Kansas in federal district court for reimbursement based on a subrogation claim for contribution as a tortfeasor and for contractual warranties and indemnity arising from K&B's lease with Haspel-Kansas. The case was tried in a bench trial. The district court entered judgment in favor of Haspel-Kansas, dismissing Westchester's claims with prejudice. Specifically, the district court determined that Haspel-Kansas's conduct was not the cause-in-fact of Stinson's injuries and that Westchester cannot benefit from the contractual indemnity provision in K&B's lease because it voluntarily settled Stinson's negligence suit. Westchester now appeals the district court's ruling.

DISCUSSION

Standard of Review

We review legal conclusions following a bench trial de novo. Phillips Petroleum Co. v. Best Offshore Servs., 48 F.3d 913, 915 (5th Cir. 1995). We review factual findings for clear error. A ruling is clearly erroneous only if the court had a definite and firm conviction that a mistake has been

3

committed. See Mid-Continent Cas. Co. v. Chevron Pipe Line Co., 205 F.3d 222, 229 (5th Cir. 2000). The substantive law of Louisiana governs in this diversity jurisdiction case. Gebreyesus v. F.C. Schaffer & Assoc., Inc., 204 F.3d 639, 642 (5th Cir. 2000).

Cause-In-Fact

To impose liability under La. Civ. Code art. 2315 for negligence, Louisiana courts undertake a duty-risk analysis. Under the duty-risk analysis, a plaintiff must prove:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was the legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damages element).

Pinsonneault v. Merchants & Farmers Bank & Trust Co., 816 So. 2d 270, 275-76 (La. 2002).

The district court found that Westchester's action for contribution against Haspel-Kansas, as K&B's subrogee, failed because neither K&B nor Haspel-Kansas was liable for Stinson's damages. The district court did not determine whether Haspel-Kansas had a duty to provide security for the parking lot, nor whether it breached any duty. Rather, the district court concluded that even assuming that Haspel Kansas had a duty and breached that duty, Westchester's claim must fail because the breach was not the cause-in-fact or legal cause of Stinson's damages. Westchester now appeals arguing that the district court erred by failing to properly apply Louisiana's duty-risk analysis, specifically the element of cause-in-fact. Under Louisiana law, the determination of whether an action is the cause-in-fact of the injury is a question of fact. Laysone v. Kansas City Southern Railroad, 786 So. 2d 682, 691 (La. 2001); Adams v. Traina, 830 So. 2d 526, 533 (La. Ct. App. 2d Cir. 10/25/02).

4

During the bench trial both parties presented expert testimony regarding the effectiveness of additional parking lot security. Westchester's expert, William E. Thornton, Jr. ("Thornton") offered additional security measures he believed would have "significantly reduced the probability" that the shooting would have occurred. Specifically, Thornton recommended blocking seven of the nine entrances to the parking lot with barricades and having police monitor the two open entrances to ensure all entrants were K&B customers. Thornton further recommended that on certain nights a temporary ordinance should be obtained to close off the public street. Haspel-Kansas's security expert, Greg O. McCrary ("McCrary") testified that deterrence is more effective in preventing violence associated with more logical crimes, rather than more irrational and emotional crimes such as the shooting in this case. With more irrational and emotional crimes, "emotion overrides reason and logic."

The district court found that the evidence showed that the shooting of Stinson was "an unplanned, irrational attack directed at [Stinson] personally in apparent retaliation for some perceived affront or exchange of words, or simply a most unfortunate encounter with [Stinson] as he was leaving the parking lot." The district court agreed with Haspel-Kansas that none of the security measures recommended by Thornton would have deterred this shooting. The shooter, James Espadron ("Espadron") was a convicted felon with a long criminal history, including resisting an officer. On the night of the shooting, Espadron was carrying a gun in violation of his probation. The district court found no evidence that Espadron acted in a threatening manner toward anyone in the parking lot prior to the shooting, nor any evidence to suggest that Espadron would have given an officer reason to believe he posed a danger. The district court also noted that Espadron shot Stinson "in front of multiple eye-witnesses, and in the presence of at least one visible, uniformed police officer

5

who was nearby." According to McCrary, only immediate and direct intervention by a police officer after Espadron drew his weapon, but before he shot Stinson, would have prevented the shooting.

Crediting McCrary's testimony, the district court concluded that assuming K&B or Haspel-Kansas had a duty and breached that duty, their conduct did not constitute the cause-in-fact of Stinson's injuries. Thus, the district court found that neither K&B nor Haspel-Kansas were negligent in the shooting of Stinson. Because neither were liable for Stinson's damages, the district court held that Westchester's claim for contribution against Haspel-Kansas must fail.

In Roberts v. Benoit, the Louisiana Supreme Court noted that cause-in-fact is usually a "but for" inquiry, but "[a]n alternative method for determining cause in fact, which is generally used when multiple causes are present, is the 'substantial factor' test." 605 So. 2d 1032, 1042 (La. 1991). The Louisiana Supreme Court further noted the following:

> We recognize the very limited scope of the cause in fact inquiry in Hill v. Lundin & Associates, Inc., 260 La. 542 (1972). There, we held that to the extent the defendant's actions had something to do with the injury the plaintiff sustained, the test of a factual, causal relationship is met.

Id. (emphasis added). Nevertheless, Westchester relies on Hill contending that the proper inquiry is whether Haspel-Kansas's conduct "had something to do with" Stinson's injuries. Post Roberts, however, the Louisiana Supreme Court has indicated that the cause-in-fact requirement is no longer so limited. See Lasyone v. Kansas City Southern Railroad, 786 So. 2d 682, 691 (La. 2001). Determining cause-in-fact, particularly in a multi-causal context, however, requires a substantial factor inquiry.

In Lasyone v. Kansas City Southern Railroad, the Louisiana Supreme Court undertook the duty-risk analysis and explained that "[a] part y's conduct is a cause-in-fact of the harm if it was a

6

substantial factor in bringing about the harm." 786 So. 2d 682, 691 (La. 2001). In Lasyone, the Louisiana Supreme Court explained the following:

> [T]he pertinent question is to what extent did [the defendant's] placement of this longitudinal guardrail have something to do with the injuries [the plaintiff] suffered. See Roberts v. Benoit, 605 So. 2d 1032 (La. 1991); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So. 2d 260, 262 (La. 1972). The evidence is quite clear that the presence of the guardrail indeed "was a substantial factor in bringing about the harm" that [the plaintiff] suffered.

Id. (emphasis added). Accordingly, the Louisiana Supreme Court found no manifest error in the trial court's finding that the defendant's action was a cause-in-fact of the plaintiff's injuries. Id.

In light of Lasyone, it appears that the Louisiana Supreme Court has transformed the earlier threshold test -- that the conduct have "something to do" with the plaintiff's injuries – into an inquiry of "to what extent" did the defendant's conduct have something to do with the plaintiff's injuries. For example, in cases involving multiple causes, a substantial factor test is used. See, e.g., Adams, 830 So. 2d at 533 ("Where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the harm or injuries."). Under this standard, we find that the district court's findings were not clearly erroneous. There is ample evidence in the record to support the district court's findings that the actions or inactions of Haspel-Kansas were not the cause-in-fact of Stinson's injuries. The district court was in the best position to weigh the evidence and test the credibility of the experts provided by both parties.

Westchester further argues that the mere possibility that Stinson would have still been shot even if additional security measures had been implemented does not defeat causation. See, e.g., Rich v. Tench Electric Motor Works, Inc., 642 So. 2d 293, 298 (La. App. 2d Cir. 8/19/94) ("[T]he possibility that the accident would have occurred despite the suggested precautions does not break

7

the chain of causation."). Westchester's argument is unpersuasive. There is nothing in the district court's opinion to suggest that its finding that the action or inactions of Haspel-Kansas were not a cause-in-fact of Stinson's injuries was based on <u>mere possibility</u> that Stinson would have been shot regardless of Haspel Kansas's failure to provide additional security. A fair reading of the district court's opinion shows that the district court believed it is <u>very likely</u> that the incident would have occurred despite any additional security. As the Louisiana Supreme Court articulated, a party's act may be a substantial factor in bringing about harm when "the act is a cause-in-fact in bringing about the injury when the harm would not have occurred without it. While a party's conduct does not have to be the sole cause of the harm, it is a necessary antecedent essential to an assessment of liability." <u>Lasyone</u>, 786 So. 2d at 691.[1]

<u>Contractual Indemnity</u>

The lease agreement between K&B and Haspel-Kansas contained the following provision:

Article 17: LIABILITY INSURANCE
B.     Lessor agrees to hold Lesee harmless of and from any responsibility for injury to person or damage to property resulting from any occurrence in, on, or about the Shopping Center outside of the leased premises, including without limitation the sidewalks and parking areas, not due to the negligence of the Lesee.

The district court held that despite its finding that K&B was not liable for Stinson's injuries, and that K&B did not admit liability as part of its settlement, "the fact remains that K&B's (and Westchester's) payment to Mr. Stinson was to settle his negligence claim against K&B. Because that

---

[1]The remainder of Westchester's arguments regarding Haspel-Kansas's tort liability involve whether Haspel-Kansas had a <u>duty</u> to act. Even assuming that Westchester can demonstrate that Haspel-Kansas had a duty, and breached that duty, such a showing does not demonstrate that the breach was a cause-in-fact of Stinson's injuries.

payment was due solely to K&B's choice to terminate the danger of being cast in judgment on Mr. Stinson's negligence claim against it, K&B cannot benefit from the indemnity clause."

Westchester contends that it may pursue its contractual indemnity claim against Haspel-Kansas under this Court's decision in Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co., 89 F.3d 243 (5th Cir. 1996). In Pine Bluff Sand & Gravel Co., the plaintiff, Newberg, sued under an indemnification provision contained in a contract for dredging work along the Red River. Newberg sued to recover monies it had contributed to a settlement and the costs of defending itself in the underlying action. The indemnification provision stipulated that Pine Bluff was not required to indemnify Newberg "to the extent that" Newberg caused the loss. Pine Bluff argued, inter alia, that Newberg had waived its right to seek indemnification because it participated and contributed to the settlement, precluding a trial on the merits which would have determined whether Newberg was free from fault.

Pine Bluff argued that by avoiding a determination of fault (i.e. if Newberg was at fault, then there is no indemnification), Newberg should not be able to recover for the money it paid in the settlement or the cost to defend. This Court rejected Pine Bluff's waiver argument, stating that:

> Louisiana law does not bar Newberg from pursuing a post-settlement determination of fault through an action against Pine Bluff to enforce the terms of their indemnification agreement. Indeed, such a bar would conflict with firmly established public-policy encouraging settlements.

Id. at 248. This Court further noted that because the settlement was a multi-party settlement, this "makes evident the inadvisability of precluding Newberg from having its day in court on the apportionment of fault issue." Id. In sum, we declined to "punish Newberg for its willingness to help advance a multi-party settlement." Id.

9

The instant case, however, is distinguishable from Pine Bluff Sand & Gravel Co.. Unlike Pine-Bluff, Haspel-Kansas has not asserted a "waiver" argument. Moreover, unlike Newberg, Haspel-Kansas did not participate in the settlement of the underlying suit. Under the indemnification provision at issue in this case, Haspel-Kansas indemnifies K&B for "any responsibility for injury to person ... not due to negligence of Lessee." The district court's analysis is consistent with the terms of the indemnity provision. Under the indemnity provision, K&B is entitled to indemnity for any responsibility not due to its negligence. Although K&B did not admit liability as part of the settlement, it did unilaterally decide to settle a negligence suit, thereby creating K&B's "responsibility" under the indemnity provision. We conclude that neither K&B nor Westchester should benefit from the indemnity provision where, as Haspel-Kansas argues, only its unilateral decision to avoid risk forms the basis for the so-called "responsibility" which triggers the obligation to indemnify under the lease. Such a holding would lead to a perverse result, that is, an indemnitee would have the incentive to settle even frivolous claims in order to avoid the costs and risks associated with litigation, and then demand indemnity for the pay-out.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRM.