United States Court of Appeals
Fifth Circuit

**F I L E D**

June 16, 2004

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 03-30979

GREAT AMERICAN INSURANCE COMPANY,

Plaintiff-Appellee,

versus

MCELWEE BROTHERS, INC. & TRI-STATE
DESIGN CONSTRUCTION COMPANY, INC.; ET AL.,

Defendants,

MELVIN M. MCELWEE, SR.; MCELWEE
BROTHERS, INC.; SYLVIA HURST,

Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Louisiana
(03-CV-2793)

Before DeMOSS, STEWART, and PRADO Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Melvin M. McElwee, Sr. ("Mr. McElwee"), McElwee Brothers, Inc. ("McElwee Brothers"),

and Sylvia Davis (collectively, "the indemnitors") appeal the district court's issuance of a preliminary

injunction prohibiting the indemnitors from interfering with the Great American Insurance Company

("Great American") pursuit of certain construction claims. The indemnitors challenge the district

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published
and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

court's determination that an agreement of indemnity's assignment clause is triggered by the issuance of a termination for default. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 1999, the United States Army Corps of Engineers ("Corps") issued a bid solicitation referred to as, "Construction Solicitation and Specifications for a Southeast Louisiana Project, Dwyer Road Drainage Pumping Station Improvements Discharge Tubes and Canal, Solicitation No. DACW29-00-B-005" ("Project"). The Project required the successful bidder to provide payment and performance bonds pursuant to the Miller Act, 40 U.S.C. §§ 270(a)-270(f).

McElwee Brothers, a small disadvantaged business seeking to submit a bid to work on the Project but lacking the financial capacity to perform, signed a joint venture agreement with Tri-State Design Construction Company, Inc. ("Tri-State") to bid on, and if successful, perform and complete the construction work for the Project. On October 25, 1999, McElwee Brothers and Tri-State entered into an "Agreement of Indemnity" ("the 1999 GAI") with Great American requiring Great American to issue the requisite bonds as the payment and performance bond surety, and on a later date, signed the 2002 GAI (signed only by Tri-State and not McElwee Brothers or Mr. McElwee) on an unrelated project.

By letter dated March 29, 2001, the Corps notified the Joint Venture that its bid for the Project was accepted. Accordingly, the Joint Venture entered into a contract with the Army for construction of the Project. Great American issued payment and performance bonds, dated March 30, 2001, for the Project on behalf of the Joint Venture.

The Joint Venture performed work and provided labor/materials for the general construction of the Project. As early as April 17, 2002, however, problems began to arise. The Corps notified the

2

Joint Venture that its "Overall Performance" on the project had been "unsatisfactory" citing problems with quality control, timely performance, and effectiveness of management. On June 24, 2003, the Corps terminated the contract for default.

The Corps called upon Great American, as performance bond surety, to arrange for completion of the Project, which Great American complied with. In all, Great American made payments totaling in excess of $370,000 pursuant to its obligations under the Performance Bond and made payments of approximately $1,100,000 in accordance with its Payment Bond obligations.

On July 23, 2003, McElwee Brothers and Mr. McElwee filed suit against Tri-State to seek damages to reimburse Great American due to the default. Days later, Great American requested from McElwee and Tri-State collateral security in the aggregate amount of $2,000,000 each. Tri-State complied with Great American's request to its satisfaction. On September 17, 2003, Mr. McElwee as managing Joint Venturer, appealed the termination for default to the Armed Services Board of Contract Appeal ("ASBCA") and Mr. McElwee filed six petitions with the ASBCA involving six claims on the Project.

Great American filed for, *inter alia*, injunctive relief to prevent the Joint Venture from seeking a reversal of the termination for default. On October 16, 2003, the district court, in granting Great American's request for a preliminary injunction, found that the Joint Venture had assigned its interests in and rights to pursue any claims to Great America. The district court, in interpreting the 1999 GAI, determined that the term "breach" included the Corps issuance of the termination for default. Additionally, the district court found that the failure of the indemnitors to comply with the request from Great American to post $2,000,000 in collateral security also constituted a breach of the indemnity agreement.

3

## STANDARDS OF REVIEW

Although the ultimate decision whether to grant or deny a preliminary injunction is reviewed only for abuse of discretion, we review a decision grounded in erroneous legal principles de novo and findings of fact are reviewed only for clear error. Women's Medical Center of NW Houston, et al. v. Bell, 248 F.3d 411,419 (5th Cir. 2001).

Our de novo review of legal questions includes the interpretation and application of indemnity agreements. Liberty Mutual Ins. Co. v. Pine Bluff Sand & Gravel Co., Inc., 89 F.3d 243, 246 (5th Cir. 1996). The preliminary determination whether an agreement is ambiguous also constitutes a question of law that is reviewed de novo. Id.

## DISCUSSION

I.      Subject Matter Jurisdiction & Mr. McElwee's Brief

We begin first with a preliminary matter concerning whether our exercise of jurisdiction is proper. Mr. McElwee argues that under the Tucker and Contract Dispute Act, 28 U.S.C. § 1346, we lack subject matter jurisdiction over claims decided by a contracting officer and pending before the Armed Services Board of Contract Appeals. We disagree.

Under 28 U.S.C. § 1346, the U.S. Court of Federal Claims has concurrent jurisdiction over "[a]ny other civil action or claim against the United States. . . ." 28 U.S.C. § 1346(a)(2) (emphasis added). Here, the United States is not a party to this action. Therefore, we find that § 1346 clearly does not apply.

However, the district court properly exercised jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction), as Great American is a citizen of Ohio and McElwee & McElwee Brothers are citizens of Louisiana. Also, the amount in controversy is $2,140,000. Furthermore, this court properly has

4

jurisdiction of an appeal from an interlocutory order granting a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1). Here, the appeal centers around the district court's grant of a preliminary injunction (1) requiring McElwee and the McElwee Brothers to refrain from interfering with Great American Insurance Company's exercise of its rights under the general agreement of indemnity and (2) prohibiting McElwee and the McElwee Brothers from taking any action as to the termination for default. Therefore, pursuant to § 1292, we properly have jurisdiction.

As another preliminary matter, Mr. McElwee's asserts a multitude of arguments under various statutes and federal acts. Following a thorough review of the record, we find that this case does not involve any of the claims mentioned in Mr. McElwee's brief. Great American brought this action solely to enforce a general indemnity agreement executed by the indemnitors in favor of Great American. Therefore, we find McElwee's arguments irrelevant to the present action.

II.     The Merits: Breach of General Indemnity Agreement

Turning to the merits, the indemnitors do not contest the district court's granting of the preliminary injunction based on findings that Great American would suffer irreparable injury, that the threatened injury to Great American outweighed any harm that the injunction might cause the indemnitors, or that the injunction would serve the public interest. Because such issues were not raised on appeal, we find that the indemnitors waived those issues. Leasehold Expense Recovery, Inc. v. Mothers Work, Inc., 331 F.3d 452, 463 (5th Cir. 2003) (stating that "[f]ailure to raise an issue on appeal constitutes a waiver of that argument"). The sole challenge of the preliminary injunction by the indemnitors concerns the substantial likelihood of success on the merits. Specifically, the indemnitors challenge the district court's determination that the Corps issuance of a notice of termination for default triggers the 1999 GAI assignment clause.

Under Louisiana law, indemnity provisions are construed in accordance with general rules governing contract interpretation. Liberty Mutual, 89 F.3d at 246; see also Sovereign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982, 984 (La. 1986). Interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code Ann. art. 2045. When the terms of a contract are clear and explicit and lead to no absurd consequences, we interpret them as a matter of law, and no further interpretation may be made in search of the parties' intent. Texas Eastern Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir. 1998); see also Liberty Mutual, 89 F.3d at 246. On the other hand, ambiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties. Liberty Mutual, 89 F.3d at 246.

Here, the indemnity provision in paragraph 3 of the 1999 GAI specifies, in relevant part, that the indemnitors will assign to Great American

> as collateral, to secure the obligations in any and all of the paragraphs of this Agreement . . . but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of said bonds; or (2) of any breach of the provisions of any paragraphs of this Agreement; . . . : (a) All the rights of the Contractor in and growing in any manner out of the Bonds; . . . (e) Any and all percentages retained and all sums that may be due or hereafter become due on account of any and all [sic] contracts referred to in the Bonds and all other contracts whether bonded or not in which Contractor has an interest.

The heart of this appeal therefore is a dispute over whether the term "breach" constitutes a notice of a termination for default, thereby triggering an assignment of all rights to Great American.

The indemnitors contend that the district court erred by interpreting the 1999 GAI using its own subjective interpretation of "breach" instead of the plain meaning of the term. The indemnitors argue that an ambiguity exists, under the 1999 GAI, as to whether a termination for default constitutes a breach of contract or merely an allegation of breach of contract. We cannot agree.

6

Paragraph 3 of the 1999 GAI states that a breach of any provision of any paragraph of that agreement may trigger an assignment. Paragraph 2 of the 1999 GAI provides that the indemnitors:

> **shall exonerate, indemnify, and keep indemnified** [Great American] from and against all liability for losses and/or expenses . . . and from and against any and all such losses and/or expenses which [Great American] may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds. (2) By reason of the failure of [Indemnitors] to perform or comply with the covenants of this Agreement . . . . Payment by reason of the aforesaid causes shall be made to [Great American] by [Indemnitors] **as soon as liability** exists or **is asserted against [Great American]**, whether or not [Great American] shall have made any payments therefor . . . .

(emphasis added). The plain meaning of paragraph 2 suggests that indemnity and exoneration are owed to Great American, not only if there is a breach, but as soon as liability is asserted. Similarly, a plain reading of the aforementioned paragraph 3 mandates that certain rights, including rights of the Joint Venture in the contracts incorporated in the Bonds and all sums due or to become due on the contracts referred to in the Bonds, are assigned to Great American as collateral.

Reading GAI paragraphs two and three together as a whole, we find that the Indemnitors' indemnity/exoneration obligation arises **"as soon as liability . . . is asserted"** and the purpose of the assignment clause is to assign the specified rights to Great American to secure any potential liability. In accord with this plain meaning, we find that even an "allegation" of breach, forfeiture, or abandonment triggers the assignment clause because that is an assertion of Great American's liability. Because the meaning of the 1999 GAI is plain, and there is no ambiguity, we affirm the district court's ruling allowing the assignment of claims from McElwee Brothers to Great American.

Even assuming, *arguendo*, that the plain meaning of the 1999 GAI is not dispositive, the preliminary injunction was proper because the issuance of the Termination for Default constitutes a breach of the Performance and Payment Bonds. As Great American reminds us, we may affirm a

judgment of the district court if the result is correct, even if its affirmance is upon grounds not relied upon by the district court. Sugar Busters, LLC v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999).

Upon default of obligations under a performance bond, "a surety is primarily and immediately liable to the obligee for the performance of the contract." Howell v. Commissioner of Internal Revenue, 69 F.2d 447 (8th Cir. 1934), cert denied, 292 U.S. 654. Here, under the Performance Bond, Great American was obligated to complete the contract if the Joint Venture failed to perform and fulfill "all the undertakings, covenants, terms, conditions, and agreements of the [Project]." The indemnitors right to proceed under the contract was terminated by the Corps issuance of its notice of termination for default. The Corps allowed the construction contract to be completed by Great American, which was also held liable for any increased costs caused thereby. Thus, Great American's liability was "asserted" under paragraph 3 as Great American had to perform the Joint Venture's obligations under the Project and was subjected to primary and immediate liability under the Performance Bond.

Moreover, under the Payment Bond, Great American's obligations are triggered if the Joint Venture fails to promptly make "all payments to all persons having a direct relationship with the [Joint Venture] or a subcontractor of the [Joint Venture]. . . ." The record shows that following the Termination for Default, Great American made payments to various subcontractors for furnishing labor and materials on the Project. Thus, this court may find that the Joint Venture breached its Payment Bond obligations, thereby triggering the assignment provision.

The indemnitors also challenge the district court's finding that each member of the Joint Venture, McElwee Brothers and Tri-State, must post collateral to indemnify Great American, and only the former failed to do so. The indemnitors argue that since the indemnity agreement

8

demonstrates the solidary nature of the obligation, Great American must request the entire collateral security from the indemnitors as a group, without division.  The 1999 GAI states:

> NOW THEREFORE, in consideration of the premises the Contractor and Indemnitors for themselves, their heirs, executors, administrators, successors, and assigns, **jointly and severally** hereby covenant and agree with the Surety . . .

[emphasis added].  The heart of the indemnitors contention is that the phrase "joint and severally" is ambiguous, as to whether the indemnitors are liable as a whole or proportionately, and thus the district court erred in failing to allow the use of extrinsic evidence to discern the parties intentions. We are not persuaded.

The indemnitors solidary obligation argument is foreclosed by our precedent.  We previously stated, that we cannot conclude, absent an express written stipulation, that an indemnity agreement expresses an intent of the parties to be solidarily bound.  Whilhite v. Schendle, 92 F.3d 372, 375 (5th Cir. 1996); see also USX Corp v. B.J. Tanenbaum, 868 F.2d 1455, 1459 (5th Cir. 1989) ("[w]hile the terms 'in solido' or 'jointly and severally' are not talismanic, [Louisiana] Civil Code article 2093 requires something more than the "tenor" of the agreement to create a solidary obligation").

Moreover, we find the plain meaning of "joint and severally" placed the indemnitors on full notice that Great American had the discretion to apportion performance of the collateral separately from either Tri-State or McElwee Brothers.  See Black's Law Dictionary (7th ed. 1999) (defining the term "joint and several" to mean liability "apportionable either among two or more parties or to only one or a few select members of the group, at the adversary's discretion).  Because we find no ambiguity of the term "joint and severally," the district court did not err in rejecting the indemnitors request to use extrinsic evidence nor in finding the indemnitors liable for the collateral security.

For the foregoing reasons, we AFFIRM the judgment of the district court.

9