STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-975


DIANNE CORMIER, ET AL


VERSUS


LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT


**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2001-3385
HONORABLE JULES D. EDWARDS, III, PRESIDING
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir and Glenn B. Gremillion, Judges.

AFFIRMED.


Patrick M. Wartelle
Roy, Bivens, Judice, Roberts & Wartelle
P.O. Drawer Z
Lafayette, LA 70502
(337) 233-7430
COUNSEL FOR APPELLANT:
    Lafayette City-Parish Consolidated Government

Pride J. Doran
DiVincenti, Fontenot-Roberts & Doran
Pinhook Tower, Suite 701
2014 West Pinhook Road
Lafayette, LA 70508
(337) 235-7888
COUNSEL FOR APPELLEE:
    Northern Insurance Company

**COOKS, Judge.**

On June 21, 2000, Joseph Cormier was killed as the result of a single car accident that occurred on Malapart Road near its intersection with Gouaux Road in Lafayette Parish. The vehicle driven by Cormier ran off the road and came to rest in a roadside ditch.

Cormier's heirs filed a lawsuit against Lafayette City-Parish Consolidated Government (hereafter LCG), J.B. Talley & Company, and its insurer, Zurich Insurance Company, a/k/a Northern Insurance Company of New York (hereafter Northern). The basis of plaintiffs' claims against LCG is that Malapart Road was defective and under the care and custody of LCG. Plaintiffs contended LCG failed to "adequately warn drivers of the irregular edges of the roadway and other defective conditions present on the road surface" and failed "to make adequate and timely road counts and traffic observations on Malapart Road to bring the roadway up to par with the amount of traffic that the roadway routinely accommodates, and the speeds at which the traffic customarily travels."

Northern was named a defendant on the basis that it insured J.B. Talley (who has since become insolvent), which prior to the accident completed a contract it had with LCG to make improvements on Malapart Road. J.B. Talley's contract with LCG included a provision that J.B. Talley would "defend, indemnify, and hold forever harmless" LCG for certain claims "arising out of or resulting from the performance of any of the work and/or obligations contemplated under the contract."

LCG filed a cross-claim against Northern, alleging it was an additional insured under the Northern policy with J.B. Talley. LCG then filed a motion for summary judgment against Northern on that same ground. The trial court denied the motion, holding as follows:

. . . regardless of whether [LCG] was a named insured under the policy, the policy clearly provides that coverage is not afforded "when that portion of 'your work' under the 'work contract' out of which any injury or damage arises has been put to its intended use . . ." Counsel for [LCG] acknowledges that [LCG] accepted the work, and this court finds that the work had been put to its intended use; thus, there is no coverage.

LCG then switched counsel and filed another motion for summary judgment arguing it was owed a defense and indemnity under the Northern policy. Northern then filed a cross motion for summary judgment contending there was no coverage afforded LCG under its policy with J.B. Talley. The trial court denied LCG's motion and granted partial summary judgment in favor of Northern, concluding:

As I previously maintained, on page 8 of 17 of the policy language, Section 11-F provides for an opportunity for the named insured to extend coverage of this policy to another person or organization for a specific period of time.

And for me to interpret that as an open-ended extension of coverage by one of the two parties to the contract sounds unjust. I will not do it.

The judgment rendered by the trial court decreed that "there is no coverage to the benefit of [LCG] under the Northern Insurance Company policy issued to J.B. Talley & Co., and that Northern Insurance Company does not have a duty to defend [LCG] in this litigation." LCG appealed, contending the trial court erred in ruling that Northern was not required to provide indemnity and a defense to LCG under its insurance policy with J.B. Talley. For the following reasons, we affirm.

**ANALYSIS**

In support of its argument, LCG cites this court to two cases, *Allstate Insurance Co. v. Romero*, 579 So.2d 1187 (La.App. 3 Cir. 1991) and *Charles v. LeBlanc*, 93-871 (La.App. 3 Cir. 3/2/94), 633 So.2d 866, *writ denied*, 94-1314 (La.9/2/94), 643 So.2d 148. In *Romero*, the defendant installed and furnished air conditioning units in the

plaintiff's residence. Years later a fire destroyed the residence, allegedly due to defendant's negligence in the installation of the units. Defendant's insurer at the time of the installation filed a motion for summary judgment, arguing there was no coverage relying on the completed operations exclusion in the policy. The trial court denied the motion for summary judgment and this court affirmed, finding since the named insured was "allegedly negligent by failing to perform his work properly, this negligence consists of omissions which are not excluded from coverage by the completed operations hazard exclusion." *Romero*, 579 So.2d at 1189.

In *Charles*, a welder who allegedly was negligent in performing repairs and inspections on a trailer was sued by the driver. The welder filed a third party demand against his insurer to enforce the policy and provide him a defense to the driver's claim. The trial court relied on *Romero* in refusing to grant the insurer's motion for summary judgment. A panel of this court affirmed finding "the case *sub judice* is factually similar to *Allstate v. Romero*, as it involves allegedly negligent omissions of the [welder] in repairing and inspecting the vehicle involved in the accident." *Charles*, 633 So.2d at 869.

LCG cited these two cases in the proceedings below and the trial court found they were distinguishable. We agree. The difference between the present case and *Romero* and *Charles* is that LCG is not the named insured in the Northern policy with J.B. Talley. LCG is only an additional insured by virtue of the indemnity provision set forth in the policy, which specifically limits coverage to occurrences predating "when the work was put to its intended use."

Unlike *Romero* and *Charles*, this is not a case of an insurer attempting to exclude coverage to its named insured. Section 11-F of the Northern insurance policy

provides the named insured (J.B. Talley) the opportunity to extend coverage of the policy to a third party for a specific limited period of time, in this case up to the date when the "work was put to its intended use." To hold as LCG requests would force an insurer to provide coverage, for an indeterminable period of time, to third parties based on a contract to which they were not privy. Therefore, we find the trial court did not err in concluding the Northern policy did not provide coverage to LCG. We note that our opinion in this case is limited to LCG's right to require Northern to provide indemnity and a defense to LCG under its insurance policy with J.B. Talley. It does not speak to the plaintiffs' right to seek redress against J.B. Talley and Northern.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellant, Lafayette City-Parish Consolidated Government.

**AFFIRMED.**