# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-318

TOWANDA M. SAVOY

VERSUS

VONKERRI L. KELLY-DIXON, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20176458
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

**********

### SHANNON J. GREMILLION
### JUDGE

**********

Court composed of Shannon J. Gremillion, John E. Conery, and Candyce G. Perret, Judges.

**AFFIRMED.**

**Conery, J., dissents and assigns reasons.**

**John G. Swift**
**Donna R. Moliere**
**Swift & Rhoades, L.L.P.**
**930 Coolidge Boulevard**
**Lafayette, LA 70503**
**(337) 572-9877**
**COUNSEL FOR CROSS-CLAIM DEFENDANT/APPELLANT:**
    **Lafayette City-Parish Consolidated Government**

**Barbara Bossetta**
**J. Scott Loeb**
**Loeb Law Firm**
**1180 West Causeway Approach**
**Mandeville, LA 70471**
**(985) 778-0220**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Esthay Enterprises, Inc.**

**Edwin G. Preis, Jr.**
**Preis, Kraft & Roy**
**102 Versailles Boulevard, Suite 400**
**Lafayette, LA 70509**
**(337) 237-6062**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **National Union Fire Insurance Company of Pittsburgh, PA**

**Robert I. Siegel**
**Tucker T. Bohren**
**Gieger, LaBorde & Laperouse, L.L.C.**
**701 Poydras Street, Suite 4800**
**New Orleans, LA 70139-4800**
**(504) 561-0400**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **National Union Fire Insurance Companyof Pittsburgh, PA**

**William H. Justice**
**Dana G. Hall**
**Derek M. Tanner**
**Tanner & Justice**
**2900 Westfork Drive, Suite 610**
**Baton Rouge, LA 70827**
**(225) 421-2737**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Lyndon Southern Insurance Company**
    **Vonkerri L. Kelly-Dixon**

**Michael J. Breaux**
**Law Office of Michael J. Breaux**
**Post Office Box 51106**
**Lafayette, LA 70505-1106**
**(337) 235-8000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Louisiana Department of Transportation and Development**

**Heather N. Sharp**
**Kristopher T. Wilson**
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard**
**601 Poydras Street, Suite 2775**
**New Orleans, LA 70130**
**(504) 568-1990**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **The Burlington Insurance Company**

**Gabe A. Duhon**
**Duhon & Broussard, L.L.C.**
**Post Office Box 478**
**Abbeville, LA 70511-0478**
**(337) 893-3423**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Duhon & Broussard, L.L.C.**
    **Gabe A. Duhon**

**G. W. Rudick, II**
**G. W. Rudick Injury Lawyers**
**100 Magnate Drive**
**Lafayette, LA 70508**
**(337) 326-4535**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Towanda M. Savoy**
    **Towanda M. Savoy obo minor son, Lance Savoy**

**Eric D. Burt**
**Grant Herrin**
**Degan, Blanchard & Nash**
**5555 Hilton Avenue, Suite 620**
**Baton Rouge, LA 70808**
**(225) 610-1110**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Gulf Coast Teaching Family Services Inc.**

**James S. Broussard**
**Attorney at Law**
**100 South Louisiana Street, Suite 400**
**Abbeville, LA 70510**
**(337) 385-5500**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Towanda M. Savoy**
    **Towanda M. Savoy obo minor son, Lance Savoy**

**GREMILLION, Judge.**

Lafayette City-Parish Consolidated Government (LCG) appeals the summary judgment granted in favor of The Burlington Insurance Company (Burlington). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs filed suit for personal injury after Towanda Savoy's 16-year-old son, Lance, attempted to cross the median on a bicycle between the Evangeline Thruway and Frontage Road in Lafayette and was struck by a car driven by Vonkerri Kelly-Dixon. Plaintiffs sued the Louisiana Department of Transportation and Development, LCG, and Esthay, LCG's mowing contractor, alleging they failed to properly mow the grass thereby obscuring the views of plaintiff and Kelly-Dixon. LCG cross-claimed against Esthay and Burlington, Esthay's insurer. Burlington filed a motion for summary judgment, which the trial court granted following a January 2022 hearing. LCG now appeals.

## ASSIGNMENTS OF ERROR

LCG assigns as error:

1. The trial court erred in granting Burlington summary judgment against LCG based on there being no coverage provided under the Additional Insured endorsement of the Burlington policy.

2. The trial court erred in in [sic] failing to find that there were disputed issues of material fact as to whether Esthay had an ongoing obligation to mow the grass and hand trim vegetation in the median area at issue that did not fall within the completed operations/intended use exclusion in the Burlington policy.

3. The trial court erred in in [sic] failing to find that there were disputed issues of material fact as to the parties' intentions to have LCG included as a "Blanket Additional Insured" as evidenced by the relevant Certificates of Insurance? [sic]

4. The trial court erred in granting Burlington summary judgment against LCG based on there being no coverage provided under the Contractual Liability and contractual indemnitee provisions of the Burlington policy.

5. The trial court erred in failing to find that LCG is entitled to cross-claim for defense and indemnity against Burlington under the Contractual Liability and contractual indemnitee provisions in the Burlington policy both as a contractual indemnitee and/or as a third party beneficiary.

## DISCUSSION

The law pertaining to summary judgment was discussed by the Louisiana Supreme Court in its per curiam opinion in *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (alteration in original):

> We review a district court's grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Summary judgment is warranted only if "there is no genuine issue as to material fact and [ ] the mover is entitled to judgment as a matter of law." La.Code Civ.Proc. art. 966(C)(1). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor.

> "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p.27 (La. 7/5/94), 639 So.2d 730, 751, (quoting *South Louisiana Bank v. Williams,* 591 So.2d 375, 377 (La.App. 3 Cir. 1991), *writs denied*, 596 So.2d 211 (La.1992) (alteration in original). A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id.*

> Whether a fact is material is determined in light of the relevant substantive law. *Weingartner v. La. IceGators*, 02-1181 (La.App. 3 Cir. 4/17/03), 854 So.2d 898, *writ denied*, 03-1388 (La. 9/19/03), 853 So.2d 645.

*Thibodeaux v. Circle K Stores, Inc.,* 20-540, p. 2 (La.App. 3 Cir. 5/5/21), 318 So.3d 465, 467.

### *Insurance Policy Interpretation*

Whether an insurance contract provides coverage is generally a legal question ripe for summary judgment procedure. *Motorola, Inc. v. Associated Indem. Corp.*, 02-0716 (La.App. 1 Cir. 6/25/04), 878 So.2d 824, *writs denied*, 04-2314, 04-2323,

2

04-2326, 04-2327 (La. 11/19/04), 888 So.2d 207, 211, 212. However, summary judgment relating to coverage questions should not be granted unless there is no "reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." *Id.* at 829.

An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts. *McQuirter v. Rotolo,* 11-188 (La.App. 1 Cir. 9/14/11), 77 So.3d 76. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. "The words of a contract must be given their generally prevailing meaning." La.Civ.Code art. 2047. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La.Civ.Code art. 2048. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050.

An insurer bears the burden of proving that an exclusion applies under the policy. *Louisiana Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London,* 616 So.2d 1250 (La.1993). Additionally, exclusionary clauses in insurance policies are strictly construed. *Calogero v. Safeway Ins. Co. of La.,* 99-1625 (La. 1/19/00), 753 So.2d 170. However, an insurance policy, including its exclusions, "should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Motorola,* 878 So.2d at 829.

3

The overarching issue in this appeal is whether the Burlington policy affords LCG coverage via any number of claimed avenues. The trial court found that there were no genuine issues that it did not and granted summary judgment in favor of Burlington.

**ASSIGNMENTS OF ERROR ONE AND TWO**

*Coverage as an Additional Insured-Completed Operations/Intended Use*

The additional insured endorsements states (emphasis added):

**ADDITIONAL INSURED- OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**

This endorsement modifies insurance provided under the following:

COMMERICAL GENERAL LIABILITY COVERAGE PART

A. **Section II – Who is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

In the performance of your *ongoing operations* for the additional insured.

However, the insurance afforded to such additional insured:

1. Only applies to the extent permitted by law; and

2. Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement *ends when your operations for that additional insured are completed.*

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

4

This insurance does not apply to:

. . . .

2. "Bodily injury" or "property damage" occurring after:

a. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

b. That portion of "your work" out of which the injury or damage arises has been put to *its intended use* by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

We agree with the trial court's finding that there is no genuine issue that LCG is not an additional insured under the ongoing operations endorsement. This endorsement applies to work actively being engaged in. For example, LCG would be an additional insured if bodily injury occurred to a third party while Esthay was actively mowing the grass in question. Under the undisputed facts of this case, the grass cutting had been completed and put to its intended use, inasmuch as that term can be used to describe cut grass. Otherwise, if the coverage was continuous as long as Esthay was the mowing and maintenance contractor for LCG, there would be no reason to purchase coverage for an additional insured.

The case relied upon by the trial court, *James v. Hyatt Corp. of Delaware*, 981 F.2d 810 (5th Cir.1993), addressed a nearly identical factual scenario where the subcontractor (Schindler) failed to name Hyatt as an additional insured and periodic maintenance was required of the subcontractor. In *James*, the plaintiff was injured in an elevator that Hyatt subcontracted with Schindler to maintain. Hyatt had a contract with Schindler requiring it to be named an additional insured on Schindler's Hartford policy. Hyatt was not a named insured in the Comprehensive General

5

Liability Policy issued by Hartford as was required under the contract it had with Schindler.

Hyatt *was* a named insured under the "Owners and Contractors Protective Liability Policy" but was excluded from coverage because work on the elevator was not "in progress" at the time of the accident. The *James* court stated:

> The Hartford contends that James' claims fall within exclusion (b)(2), arguing that the OCPL policy covers only damage which occurs while service or maintenance work is in progress. In effect, the policy treats each act of servicing or maintenance as a *discreet insurable event*. Schindler was not servicing or maintaining the escalator and the escalator was being put to its intended use when James was injured. Accordingly, this occurrence falls within the (b)(2) exclusion.
>
> Exclusion (b)(2) is similar to the completed operations exclusion found in many CGL policies. Completed operations exclusions consistently have been held to be clear and unambiguous. Hyatt contends that these completed operations exclusions cases are inapposite. We do not agree. For example, in *Rothman* the exclusion was applied to an air condition repair contractor. The *Rothman* court found that the policy did not cover the claims against the contractor by a homeowner whose residence was destroyed by fire shortly after the contractor worked on his heating system. Because the repair was complete when the fire began, the exclusion applied.

*Id*. at 813-14 (emphasis added) (footnotes omitted).

The *James* court concluded that Hartford had no duty to defend Hyatt under the CGL or OCPL policy.

LCG is not an "additional insured" for purposes of coverage under the Burlington policy because Esthay failed to name LCG as an additional insured and Esthay was not in the process of mowing at the time the accident occurred.

LCG strenuously argues that, at the very least, there is a genuine issue of fact whether the mowing had been put to its intended use inasmuch as it alleges that "hand trimming" had not been completed by Esthay. LCG advanced this argument at the hearing on the motion, and the trial court thoroughly questioned the parties on

6

the issue to determine if there was any genuine issue regarding the intended use exclusion. LCG's counsel argued:

> . . . there's definitely a genuine issue of fact as to whether or not his operation was concluded, because the contract specifically states and the affidavits state, once he does his mowing, he is, within twenty-four hours supposed to follow up with the hand trimming. And he hadn't done yet done that, and so he didn't complete his operations.

Burlington, on the other hand, argued that it was irrelevant under the exclusion if the hand mowing had been completed by Esthay stating:

> The twenty-four hours had passed. So if he had any intention of going back out there and doing hand trimming, he would have done it and he – there was – the job was complete, as far as Esthay Enterprises was concerned. There was no going back out there until the next mowing cycle.

> So again, nobody is disputing that the last time that this median was mowed was during the week of August 15th through August 22nd, 2017, which was a couple of weeks before this accident. Rather again, they are accusing them of an omission rather than an affirmative act.

> . . . .

> But poor work or not, Esthay's work had ceased and had been put back into use, and he wasn't coming out there again until the next mowing cycle.

Different counsel continued:

> . . . to go back to this exclusion versus coverage, the insuring agreement only insures whenever he is out there mowing. It doesn't matter whether he misses a streak of grass and – or anything like that. If he is out there mowing, there is insurance.

> They haven't said that. Nobody disputes that he was not out there mowing. . . .

> Now, whether he did a good job, a poor job, whether he's liable to the plaintiffs in tort, whether he's liable to LCG under the contract, that's for another day. We are just saying they are not additional insured under this policy.

We agree. The issue of whether an omission or failure to do something constitutes a continuing act for purposes of the intended use exclusion in order to provide coverage for an additional insured has been addressed before. While a panel

7

of this court found that an omission creates a genuine issue of fact whether the discreet event has been put to its intended use, a more recent panel of this court pointed out the distinction of the named insured versus an additional insured in a case against LCG.  In *Cormier v. Lafayette City-Parish Consolidated Government,* 03-975, pp. 3-4 (La.App. 3 Cir. 2/11/04), 866 So.2d 395, 397, we stated (emphasis added):

> In *Charles* [*v. LeBlanc*, 93-871 (La.App. 3 Cir. 3/2/94), 633 So.2d 866, *writ denied*, 94-1314 (La. 9/2/94), 643 So.2d 148], a welder who allegedly was negligent in performing repairs and inspections on a trailer was sued by the driver. The welder filed a third party demand against his insurer to enforce the policy and provide him a defense to the driver's claim. The trial court relied on *Romero* in refusing to grant the insurer's motion for summary judgment. A panel of this court affirmed finding "the case *sub judice* is factually similar to *Allstate v. Romero,* as it involves allegedly negligent omissions of the [welder] in repairing and inspecting the vehicle involved in the accident." *Charles,* 633 So.2d at 869.
>
> LCG cited these two cases in the proceedings below and the trial court found they were distinguishable. We agree. The difference between the present case and *Romero* and *Charles* is that LCG is not the named insured in the Northern policy with J.B. Talley. *LCG is only an additional insured by virtue of the indemnity provision set forth in the policy, which specifically limits coverage to occurrences predating"when the work was put to its intended use."*
>
> Unlike *Romero* and *Charles,* this is not a case of an insurer attempting to exclude coverage to its named insured. Section 11–F of the Northern insurance policy provides the named insured (J.B. Talley) the opportunity to extend coverage of the policy to a third party for a specific limited period of time, in this case up to the date when the "work was put to its intended use." *To hold as LCG requests would force an insurer to provide coverage, for an indeterminable period of time, to third parties based on a contract to which they were not privy.* Therefore, we find the trial court did not err in concluding the Northern policy did not provide coverage to LCG. We note that our opinion in this case is limited to LCG's right to require Northern to provide indemnity and a defense to LCG under its insurance policy with J.B. Talley. It does not speak to the plaintiffs' right to seek redress against J.B. Talley and Northern.

We agree with the reasoning in *Cormier*.  Otherwise, the intended use exclusion is meaningless if every act of negligence by the insured creates an

additional insured regardless of whether the insured is actively engaged in the activity for which it is had been contracted. This case is analogous to *James* in that it is an allegation of a failure to do something, i.e., inspect the elevator or properly maintain the grass in the median.

Burlington simply is not bound by the agreement made between Esthay and LCG. This argument has been advanced by others and failed for the simple premise that an insurance company does not gratuitously provide policies. *See Lopez v. Hartford Acc. & Indem. Co.,* 495 So.2d 375 (La.App. 3 Cir.), *writs denied,* 498 So.2d 757, 758 (La.1986), *See also James,* 981 F.2d 810.

This assignment of error is without merit.

## ASSIGNMENT OF ERROR THREE

*Parties' Intentions*

LCG spends a significant portion of its brief referring to the parties' intentions to add it as an "additional insured" under Esthay's policy. It is a well-settled principle of insurance contract law that parole evidence will not be allowed to prove the parties' intent:

> Parole evidence cannot be introduced when the provisions of an insurance contract are clear and explicit, and lead to no absurd consequences; courts must enforce the contract as written. La.Civ.Code art.2046. Furthermore, courts are prohibited from taking parol evidence to explain or contradict the insurance contract's clear meaning. La.Civ.Code art. 1848. The Commercial Liability Policy is an act under private signature; therefore, under La.Civ.Code art. 1983, the insurance contract is full proof of the agreement and is the law between the insured and insurer. The meaning and intent of the parties must be sought within the four corners of the insurance contract and cannot be explained or contradicted by parole evidence. La.Civ.Code art. 1848.

*Peterson v. Schimek*, 98-1712, pp. 10-11 (La. 3/2/99), 729 So.2d 1024, 1032.

Furthermore, "Certificates of Insurance" issued by agents are not insurance policies. The Certificate of Insurance issued by Burlington to Esthay specifically stated in bold capital letters at the top of the form:

**THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.**

Louisiana Revised Statutes 22:881 pertains to the construction of insurance policies and states that "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or applications attached to or made part of the policy." The terms of the certificate are very clear that it is for informational purposes only and has no effect on the policy. *See All Crane Rental of Ga., Inc. v. Vincent*, 10-116 (La.App. 1 Cir. 9/10/10), 47 So.3d 1024, *writ denied*, 10-2227 (La. 11/19/10), 49 So.3d 387; *Citgo Petroleum Corp. v. Yeargin, Inc.*, 95-1574 (La.App. 3 Cir. 2/19/97), 690 So.2d 154, *writs denied*, 97-1223, 97-1245 (La. 9/19/97), 701 So.2d 169, 170.

Accordingly, we are limited to the four corners of the insurance contract in determining for what and to whom it affords coverage because parole evidence is not allowed when the terms of the policy are clear and explicit, and a certificate of insurance does not confer coverage.

Accordingly, this assignment of error is without merit.

### ASSIGNMENT OF ERROR FOUR

*Coverage under the Contractual Liability and Contractual Indemnitee Provisions*

The policy provides commercial general liability insurance according to the following terms:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 1. **Insuring Agreement of Section I – Coverage A – Bodily Injury and Property Damage Liability** is replaced in its entirety with the following:

10

## 1. Insuring Agreement

a.  We will pay those sums that the *insured* becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damages" to which this insurance does not apply. . . .

. . . .

## COMMERCIAL GENERAL LIABILITY FORM

. . . .

## 2. Exclusions

This insurance does not apply to:

. . . .

b. **Contractual Liability**

"Bodily Injury" or "property damage" *for which the insured is obligated to pay* damages by reason of the *assumption of liability in a contract or agreement*. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided. . . .

An "*insured contract*" is defined in the policy in part as:

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the *tort* liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in

whole or in part, *by you or by those acting on your behalf.* However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Emphasis added).

The Mowing & Maintenance Contract entered into between Esthay and LCG indeed contains subheadings relating to Esthay's procurement of insurance and indemnification in case of a lawsuit that read, in part, as follows:

**ARTICLE 32 – CONTRACTOR'S INSURANCE AND SUBCONTRACTOR'S INSURANCE**

. . . .

The Contractor and any Subcontractors performing Work under the Contract shall be required to carry insurance as required herein.

. . . .

The Contractor (and Subcontractors) shall effect and maintain until final acceptance of the Work, insurance as follows:

. . . .

II. Commercial General Liability Insurance – Coverage under this policy must be provided on an "occurrence" basis, and not a "claims-made" basis. **THE LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, ITS OFFICIALS AND EMPLOYEES MUST BE NAMED AS AN ADDITIONAL INSURED ON THE POLICY.**

**ARTICLE 52- INDEMNIFICATION**

In the contract to be awarded, the Contractor does and will agree to defend, indemnify, and hold forever harmless the Owner and their respective employees, agents, representatives, officers, directors, elected and appointed officials, and any and all other persons for whom they may be deemed liable and/or answerable, to the extent permitted by law, from and against any and all claims, demands, causes of action, and/or rights of action arising out of or resulting from the performance of any of the work and/or obligations contemplated under the Contract, including, but not limited to, any and all claims for damages, losses, expenses and/or attorney's fees which result from any breach by the Contractor of any of the terms, provisions, conditions, and/or limitations of the contract, as well as any and all claims resulting from the sole negligence, liability, strict liability, and/or fault of the Contractor and/or the joint and/or concurrent negligence, liability, strict

12

liability, and/or fault of the Contractor with any other persons or parties whomsoever.

. . . .

Notwithstanding the aforesaid, nothing contained herein shall be deemed to limit the obligations of any insurance company providing coverage in accordance with the terms of this Contract to defend, indemnify, and hold harmless the Owner, its employees, agents, representatives, officers, directors, elected and appointed officials, and any and all other persons or parties whomsoever to the full extent of their insurance contract and/or as required by law.

LCG argues that the Burlington policy "also provides Contractual Liability coverage pursuant to which LCG is owed defense and indemnity based on the Mowing and Maintenance Contract herein being an 'insured contract.'" This statement would be true if "LCG" was replaced with "Esthay." The policy *does* provide coverage to Esthay for defense and indemnity for contracts that it enters into in which it assumes liability. The portion of the policy that LCG refers to is standard contract language used in commercial general liability policies. That provision, as noted above, excludes coverage when an insured assumes liability in a non-tortious contract such as breach of warranty claim, but provides an exception to the exclusion when the insured is liable for damages due to an "insured contract" and the property damage or bodily injury occurs subsequent to the execution of the contract. Accordingly, Esthay is entitled to coverage, including defense and indemnity, for amounts it may be liable for to LCG if it was at least partially negligent in causing the bodily injury. It does not, however, give LCG a right to defense and indemnity.

Again, the *James* court squarely addressed this same issue:

Under Louisiana law an insurer has no duty to defend one who is not a named insured. In *Musgrove* [*v. Southland Corp.*, 898 F.2d 1041 (5th Cir.1990)] *Lopez* [*v. Hartford Accident & Idem. Co.,* 495 So.2d 375 (La.App. 3 Cir.), *writs denied*, 498 So.2d 757, 758 (La.1986)]; *and Ordonez* [*v. W.T. Grant Co.*, 297 So.2d 780 (La.App.4 Cir. 1974)], *the insureds each contractually agreed to provide liability insurance covering a third party but failed to do so.* In each instance the court found that the insurer had no duty to defend the third party.

13

In *Ordonez* the court held that the insurer had no duty to defend that contractual indemnitee of its insured. Under the contractual liability provision of the policy at issue therein, the insurer's exposure was "limited to damages for which the *named insured* becomes liable as a result of a contractual agreement to indemnify or hold harmless. In the case at bar, James' complaint stated a claim for which Schindler ultimately could have been held liable under the indemnity agreement; as a result the contractual liability provision required The Hartford to defend its insured-Schindler. But the Hartford had no concomitant duty to defend Hyatt under the CGL policy.

*James,* 981 F.2d 810 at 813 (emphasis added) (footnotes omitted).

LCG relies heavily on *Rogers v. Integrated Explorations and Prod., LLC*, 18-425 (La.App. 4 Cir. 2/20/19), 265 So.3d 880, *writ denied*, 19-481 (La. 5/20/19), 271 So.3d 198, for the proposition that it is covered under the "insured contract" provision. *Rogers* is inapplicable to the facts at hand. In *Rogers*, the parties had reciprocal agreements to indemnify each other and the policy in question *named* the additional insured, Integrated (unlike here). Integrated's contract with Valerus included a provision addressing Integrated's master contract service agreement (MCSA), which stated that any other parties Integrated subcontracted with were included in the "Group" of persons to be covered under the Zurich policy carried by Valerus. While Coastal Marine, Integrated's subcontractor, was not named as an additional insured, the court in *Rogers* found the MCSA was an "insured contract" which covered Coastal Marine because:

Valerus obligated itself in the MCSA to defend and indemnify Integrated and Coastal Marine, regardless of fault, against claims by Valerus employees, including Dustin Rogers, and to secure insurance in the amounts required by the MCSA. Valerus then procured primary and excess insurance policies from Zurich and AGLIC, respectively, which named Integrated as an additional insured, and which covered contractual liability over written contracts, namely, "insured contracts" including the MCSA.

*Id*. at 894.

In *Rogers,* Integrated was named as an additional insured under Valerus's policy. Even so, we find the *Rogers* court erred, and we decline to follow it. *Rogers*

14

inappropriately, in our opinion, extends who should be included as a "named insured" by association with an additional insured based on a contract (the MCSA) that the insurance company is not privy to.

In its reply brief, LCG attempts to distinguish the Burlington policy from *Ordonez v. W.T. Grant*, by stating that under the Burlington policy, "*coverage is extended to any contractual obligation you have agreed to assume [for] the tort liability of another party.* Esthay, the named insured, in an insured contract, contractually agreed to assume tort liability alleged against LCG." (Emphasis added). This ignores the plain language of the section referencing "the insured." Section 2(b) of the policy states that the insurance does not apply to bodily injury or property damage for which *the insured* is obligated to pay because the insured assumed liability in a contract or agreement. The exception when the exclusion does not apply is to liability incurred *by an insured* due to an "insured contract" it has entered into for damages.

While all of these terms seem very similar, the difference between what is excluded (damages the insured must pay for reason of assumption of liability in a contract, i.e. breach of contract or warranty) versus what is included (damages assumed in an "insured contract" which is a contract pertaining to the insured's business under which the insured assumes tort liability of another person and bears some responsibility for the negligence) are that "Tort liability means a liability that would be imposed *by law in the absence of any contract or agreement*." In other words, negligence. Thus, this provision clearly refers to the named insured, Esthay, being liable to LCG for indemnity for its legal negligence, if it is so determined. On the contrary, if Esthay entered into a contract with LCG to assume its liability for sidewalk defects, it would be excluded under the policy because LCG has no tort liability in that circumstance. All of this to say that the contractual liability coverage

15

extends to the named insured, Esthay, when it must indemnify another party due to its tort liability.

*Coverage under Supplemental Payments*

Additionally, LCG argues that Burlington's policy further recognizes *coverage* is afforded to the "indemnitee" of an "insured" in that part of the policy addressing "Supplementary Payments – Coverages A and B." It bases this argument on Section 2, subheadings a, b, and c, which state:

> 2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following condition are met:
>
> a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";
>
> b. This insurance applies to such liability assumed by the insured;
>
> c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by insured in the same "insured contract";

Notwithstanding that the first sentence refers to "an indemnitee of the insured," there is no indication in the remaining conditions that an indemnitee becomes an insured by virtue of the supplementary payments section. In order for the insurer to agree to defend the indemnitee under this section, the remainder of the section requires:

> d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;
>
> e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and
>
> f. The indemnitee:
>
> (1) Agrees in writing to:

16

(a) Cooperate with us in the investigation, settlement or defense of the "suit",

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provide us with written authorization to:

(a) Obtain records and other information related to the "suit", and conduct and control the defense of the indemnitee in such "suit".

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Nothwithstanding the provisions of Paragraph 2.b.(2) of Section I-Coverage A – Bodily Injury and Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorney's fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

This section sets forth very specific requirements for the insurer to defend the insured's indemnitee, which have not been met in this case. The plain language gives no indication that an indemnitee becomes an insured if the insurer defends the indemnitee pursuant to this section. Owing a defense to an indemnitee when certain conditions are met does not equate to being an insured under the policy. This assignment of error is without merit.

# ASSIGNMENT OF ERROR FIVE

*Coverage under third party beneficiary-stipulation pour autri*

Again, LCG relies on *Rogers*, 265 So.3d 880, for its claim that it is a third-party beneficiary of Esthay's contract with Burlington. The *Rogers* court did find that Coastal Marine was a:

> third party beneficiary of the Zurich policy as Integrated's subcontractor. Coastal Marine is not an unintended beneficiary of the Zurich policy. Rather, the MCSA contemplates that Coastal Marine is intended to be covered for its defense and indemnification. Though Coastal Marine is not specifically named as an insured in the Zurich policy, it would be entitled to sue Zurich.

*Id.* at 897.

> Under Louisiana law, a contract for the benefit of a third party is referred to as a *stipulation pour autrui. See, e.g. Whitney National Bank v. Howard Weil Financial Corp.,* 93–CA–1568 (La.App. 4th Cir. 1/27/94), 631 So.2d 1308, 1310.

> "In order to establish a *stipulation pour autrui* there must be a clear expression of intent to benefit the third party. The third party relationship must form the consideration for a condition of the contract; the benefit may not be merely incidental to the contract." *State, In re Adoption of S.R.P.,* 555 So.2d 612, 618 (La.App. 4th Cir.1989), *writ denied,* 556 So.2d 1288 (La.1990). A contract, in order to constitute a *stipulation pour autrui,* must be "in writing and clearly manifest an intention to confer a benefit upon a third party". *DePaul Hospital v. Mutual Life Ins. Co.,* 487 So.2d 143, 146 (La.App. 4th Cir.1986).

*Concept Design, Inc, v. J.J. Krebs & Sons, Inc.*, 96-1295, p. 5 (La.App. 4 Cir. 3/19/97), 692 So.2d 1203, 1205-06.

For the same reasons noted above, we find that LCG is not a third-party beneficiary of the Burlington policy. The *Rogers* court again noted that even though Coastal Marine was not a named insured, it would receive the benefits of the Zurich policy because it was a third-party beneficiary ignoring the fact that Zurich had no part in the MCSA contract entered into by Integrated and Coastal Marine. The contract entered into between Esthay and LCG has no effect on Burlington. If every indemnitee was a "third-party beneficiary" to a commercial liability policy then

there would be no reason to have an additional named insured. Insurance companies cannot be bound to carry extra insureds for no additional premiums paid. Accordingly, this assignment of error is without merit.

## CONCLUSION

The judgment of the trial court granting summary judgment in favor of The Burlington Insurance Company is affirmed as there are no genuine issues of fact that Burlington's policy does not provide coverage to the Lafayette City-Parish Consolidated Government because it is not a named insured and is not an additional insured due to the completed/intended use exclusion. Nor does the Lafayette City-Parish Consolidated Government have an "insured contract" with Burlington; Esthay does. Costs of this appeal in the amount of $6,618.10 are assessed against the Lafayette City-Parish Consolidated Government.

**AFFIRMED**.

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-318

TOWANDA M. SAVOY

VERSUS

VONKERRI L. KELLY-DIXON, ET AL.

CONERY, Judge, dissenting.

I respectfully disagree with the majority opinion as I conclude that genuine issues of material fact remain as to whether Lafayette City-Parish Consolidated Government was an "additional insured" under The Burlington Insurance Company policy.

Most notably, I find that questions remain as to whether Esthay Enterprises, Inc. completed its cycle of work at the jobsite. I find no jurisprudential authority that the Burlington policy's "*ongoing* operations" endorsement equates to *active* operations on the jobsite. Rather, the Burlington policy requires only that the operations are ongoing until "complete."

Here, the pertinent "Specification & Contract Documents" controlling Esthay's work for LCG called for Esthay not only to "mow" but to "trim" as well. Section IV, titled "Specifications – Maintenance Mowing," provides, in part:

Mowing and Trimming

. . . .

Hand trimming is required around all fixed objects such as sign posts, delineators, culvert ends, trees, shrubs, plants, guard rails, culvert head walls, bridge abutments, bridge or overpass columns and piling, and fences where the Contractor is required to mow on both sides due to the presence of service roads or other facilities, etc., as directed by the

> Project Coordinator. Trimming shall follow the mowing operation by no more than 24 hours.

(Emphasis in the original.) The specifications further detailed that because certain areas within the defined "[m]owable areas … may not be accessible to standard mowing equipment and may require hand trimming or specialized mowing equipment such as boom or side mount mowers."

Again, the Burlington policy affords coverage to an additional insured until Esthay's "operations for that additional insured *are completed*." There is no suggestion in that policy language that the operations are completed merely because the insured performs only part of its contracted task and leaves the work site. In this case, the question remains whether Esthay timely returned to the jobsite to complete the contracted task by hand trimming the site. It is alleged that the weeds Esthay failed to trim caused visual obstructions to both the minor child as he emerged from the overgrown grass on the median and to the oncoming driver, contributing to the minor child being struck by the oncoming vehicle and causing his injuries. Whether Esthay timely did so or even intended to do so before the next mowing cycle commenced is, in my opinion, irrelevant to the policy language. Simply, it is alleged that Esthay's task was not "completed" and, therefore, a question remains as to whether the work cycle was ongoing.

This particular scenario differs from the policy language and factual scenario presented in *Cormier v. Lafayette-City Parish Consolidated Government*, 03-975 (La.App. 3 Cir. 2/11/04), 866 So.2d 395 as referenced by the majority. While *Cormier* stands for the proposition that an insurer will not be held to provide coverage for an indeterminable period of time to third parties who are not part of the insurance contract, the policy in *Cormier*, like here, excluded coverage to a

2

purported additional insured after the contracted work was put to its "intended use." The additional insured in *Cormier*, however, had in fact accepted the completed work. Thus, the trial court in *Cormier* found that the work had been put to its intended use and that there was no coverage. The ruling was maintained on appeal. *Id.*

Conversely in this case, LCG challenges whether Esthay's "operations" were "completed" due to their failure to return to the jobsite for hand trimming. Moreover, a recurring mowing cycle differs from the type of single, discrete road project at issue in *Cormier*.

Accordingly, I find that a reversal is appropriate and respectfully dissent.